There is a cross appeal involved here. Can you all address that with your arguments? Yes, Your Honor. I'll address it in my single arguments. All right. Thank you. Mr. Newton. Yes. Good morning, please. The court John Newton here for the Mr. Gandy, the appellant. This is a very important case for Mr. Gandy. This deals with his discharge and his bankruptcy case. Obviously, he's not Bernie Madoff. He's he's a car salesman. He's a straight commission car salesman and filed a chapter 13. I think the important elements of this 727 a four false oath issues we set out in our brief. But I think the most important I'll spend most of the time on is materiality. Often debtors do make mistakes in their schedules. You know, they have to schedule lots of things. They put $100 in their checking account and have $200. That could be a false oath. So whether statutes written anything that's sworn to could be a false oath. So again, debtors are under burden to making sure they put in correct information. It's that you're focusing on materiality. Don't the undisclosed income items, right? Wouldn't they have raised your client to a different level with a different set of responsibilities and presumably had to pay more out to creditors? That seems material. Yes, but in this case, it didn't make any difference. I'll go through that. I hope to answer the question. In this case, it didn't make any difference. Does that make a difference? Is that the test for materiality in this context? I mean, in criminal violations of false statements, it doesn't necessarily matter if anyone was, in fact, misled or if the result was any different. How do we know? What source do we look to say that the test here for materiality is whether it actually makes a difference? Well, the cases I cited, but I think it's clear that it has to affect the outcome of the case. And the most common cases were a failure to disclose assets. And that's really not this case. So again, when the case Judge Sutton was correct in the premise of his question, wasn't he? Yes, it is a factor in this case. Yes, absolutely. And I can explain. When a 13 is filed, when Lanning was decided in 2010, back in SEPA that was passed in 2005, there seems to be a difference of opinion as to whether the means test controlled how much to pay in a 13. Well, Lanning says no. You don't use the six-month previous average to set the payment. You use a forward-looking approach. So when the 13 is filed, the form, and I have a copy here at the top corner, the only thing the form in a means test in a Chapter 13 does is dictates the length of the case. So this form that was filed, this is the 2-3-11 filing date, it only has a box up there that dictates whether he could file a 36-month or 60. That's the only purpose in this form. Mr. Gandy filed, his plan was a 60-month case. If he had an error, it wasn't intentional, and he filed a 60-month case. If he wanted to take advantage of this means test, he could have filed a 36-month case. So again, those are the exhibits that, these are things in the record, but on the first day of filing, on 2-3-11, it was three days after the end of the month of January. As he testified, the numbers increased by about $356. So had he filed Monday of that week on the 31st of January, his means test would have been perfectly accurate. Three days later on Thursday. Maybe I'm not understanding exactly where you are in the argument, but just to tell you where I am, I thought his basic theory was, hey, listen, these were at worst mistakes because, you know, commissions, you have some estimates if you're paid by commission. So he got the estimates wrong, and so that does sound like mere negligence, mistake, but then you have this ongoing duty every 90 days to update your income. So that, to the extent you were not sure what you were doing, you surely would have been on notice that you got to correct it once you find out exactly what the commissions are. So that seems problematic from the perspective of fraud as opposed to mistake. Right, and again, on the first day of filing, he has to file his pay stubs. They were filed for December 31st and for January. So the implication is that because it was wrong, he was tempting to hide the information. The source doc, he's only on a W-2 paycheck. Those were actually filed on the first day of filing. So again, Mr. Gandy is filing all the information required, the documents to determine his income. Okay, so I'm just not following you. Maybe I just don't understand bankruptcy law. He has a duty every 90 days to update the actual income. Am I right he didn't do that? Because if he didn't do that, I don't care what he filed. Well, I think when the plan was confirmed in the 13 case, there was objections to the amount of his budgeted income. As Lanning says, you're supposed to forecast it forward. So in his Schedule I, which is also filed in addition to the means test, which is this form, at the bottom he says he received straight commission. Income fluctuates and above is based on the 2010 monthly average. So this document, which one of the courts said was false, is not required to be a current exact mirror of his income that month because he's filing 13. He's going to go 60 months down the road. So he's got to forecast it when he files. So the court held a trial in August of 2011 and confirmed his plan based on this scheduled budget, this Schedule I. So he didn't file it. Just to make sure I'm following, are you saying he had no duty to update? Well, there's certainly a Chapter 13 requires you to pay in your disposable income. And then when the judge confirmed the plan, he put a clause in there he had to file and send to the trustee his check stubs, which he did. When the trustee looked at it two years into it and filed a motion saying he had some additional gross income, he decided that he had enough of doing Chapter 13 and converted the case. But my point is, the court based it, as kept admonishing Mr. Shucart, is the day he filed, it's a Chapter 7 converted case, reverts back to the petition date on February 3rd. By the time the appeal that we have developed, we had already had a situation where not only did we have all these questions about his representations to the court, but there had been a motion to dismiss filed by the trustee because he'd failed to pay $6,110 that he'd earned as required by the bankruptcy court order. And he responds to that motion to dismiss by filing a 7. But the conduct we're looking at is the whole time period in order to determine both the 13 and the 7 in order to determine and assess fraudulent intent, correct? Well, it's the petition date. It's the documents the court looked at. I understand your question, but when the petition is determined to be a 7, a converted case, the judge looked at it, kept admonishing Mr. Shucart. It speaks of the filing date and whether his Schedule I and J were false. I don't understand anything you're telling me as far as it relates to fraudulent intent. We look at the course. When you decide about fraudulent intent, you look at the course of conduct of the individual to determine what inferences can be drawn from that. And here, we're not going to look at petition dates or anything else. What I'm asking is simply whether the entire course of conduct since the chapter 13 was filed, can that not be assessed in determining whether he has fraudulent intent as of the pertinent date in the 7? I don't disagree with the court. The court did look at that, looked at the whole history. And it was perfectly permissible to do that. I agree, but I think what the court looked at and found were the errors that were made, is my point. Starting off, if you make a mistake in your schedules, is it a false oath? This is a case where the judge found three false oaths. That's why the discharge was denied. So the false oaths are based on the filing and swearing to certain documents. And not updating later. Right. Well, that's important. But the document he's looking at is the file document. And they were updated. The means test was updated. The chapter 7 means test was updated. Within 90 days? Well, the means test doesn't have to be updated. What the judge ordered in the confirmation order was that the debtor would supply his check records to the trustee. And the court was entitled to look at the failure to pay in the context of the 13. And then the court was entitled to look at some other inconsistencies that seemed very odd. Didn't seem to know if he's married or not. Well, there was mistakes. Like I said, there was mistakes in the documents. And he's paying some sum, I can't remember what, for educational materials for a 27-year-old son that he claims in one petition. I mean, the court's entitled to consider all of that, right? Wasn't there an asset, bank account or something, what was it, that was not disclosed? Yes. One of the three things was, the third thing was a statement of not disclosing a closed bank account. But the record showed that that one was overdrawn. It was a BB&T account. And there was no asset out there. But there was, that may be, but there's no dispute that he failed to disclose the fact that he had closed the bank. That was not disputed. And it was understood. He explained that he thought it had been closed more than a year. The question asked, had you closed a bank account within the past year? And he testified he thought it was longer than that. So again, I agree there was a couple of mistakes. Obviously, the means test had been filed three days earlier. It would have been a different number. That's what the judge so held. The corrected one was correct, and it's stipulated at trial. The Chapter 7 means test that's on file now is accurate. And as the U.S. trustee, they're an interested party in these cases. The clear error applies to the finding of fraud, right? It's clear error review? It's a fact finding? Yes, and it has to include the materiality that there is. Right. So materiality is a, I guess you would say, did the judge misunderstand legally how materiality works? Or what's your way of dealing with the standard of review? He just didn't reach any findings that if you actually look at the opinion, he finds false oaths, but he never addresses whether it has any material effect on the case. He cited that as a factor. This looks to me like the judge is a she. Well, on the appeals court, the district court, yes. I'm looking at the trial court. The district court reviewed the bankruptcy judge's opinion, of course. And they looked at his findings of fact and so forth and so on. But my point was that the documents they found were false oaths. He never finds that there was any material effect in the case. And that's why I think it's clearly erroneous. If we affirm, what happens now exactly? Well, he won't get a discharge in the case. He'll owe all these debts. And so he'll be sued in state court to pay? His wages will be garnished. That's correct. But I mean, won't he refile again? There's a bar for eight years, at least. Even when there hasn't been? I thought the bar applied if there was a discharge. The bar applies if there's no discharge? If he's not granted discharge, then he can't file a case for an eight-year period. So he would be prevented from filing again. So it's a drastic measure. Like I said, I think it boils down to, yes, there is mistakes. But they're not material. And the court never found they were. So that's our position. What's the size of his indebtedness? More or less that would have to be litigated and or collected through regular processing. It would take forever to garnish him and pay it back, especially if it had an interest bearing. How many debts does he owe? So before bankruptcy, you'd have to have some kind of composition of the matter. You've got to work it out. Well, sometimes you do that if you can. But again, a lot of times it boils down to garnishment at this point. So I think my time is up. Thank you. Good morning, Your Honors. I'm Elliot Shuchart. It was very interesting hearing the argument because this is not a case where it was a one error or even a technical violation. This is a case where it's an entire gamut of documents that are false, that were proven to be false, and evidence that the debtor has still failed to provide today. So the bankruptcy judge found three false oaths. This is the first part of it, the appeal. The first false oath was in connection with the document. It was a statement of current monthly income. The statement of current monthly income is something that every debtor has to file. And it has a specific answer. That's the wonderful thing about it. What you do is you take the debtor's last six months of income, you take his pay stubs, you add them up, and you divide by six, and you get an exact number, whatever that is, for his income per month for the last six months. And Mr. Newton here was trying to say, well, this has to do with whether or not he can file for Chapter 7 or Chapter 13. But it actually has a much more, at least for this case, much more important reason, which is Section 707B-6 of the Bankruptcy Code. And I have Mr. Gandy's two briefs over here. And I looked at his table of authorities, and neither one of them cite Section 707B-6. What that is, is it's a threshold. And it says that if the debtor's income, as determined by the statement of current monthly income, is below the threshold, then a creditor, such as myself, does not have standing to file a motion to dismiss the case. So it's essentially a materiality standard. And it says, if the debtor's earning too little, then we don't want to hear from creditors. The only persons who can object are the bankruptcy court itself and the U.S. trustee. So, well, in this case, Mr. Gandy converted his Chapter 13 case to a Chapter 7 case. And me, as a creditor in the case, I filed a motion to dismiss. Mr. Newton here defended that. And he says, oh, well, Mr. Shuchart does not have standing. There's not sufficient materiality. The debtor's statement of current monthly income says his income is too low. And the income declared... What this income figure that is too low, that you say he fraudulently stated... OK. How do we get to that figure? There's a statute here that says you've got to figure a cutoff point of some kind. Now, how did that get into the law? And how do you go about establishing the cutoff point? OK. Well, the cutoff point is determined by Section 101 of the Bankruptcy Code, which is the definition section. And if you go to Section 101 whatever, you go to current monthly income, it has the definition for current monthly income. And it says, essentially, that you take the debtor's income for the last six months and then divide it by six. And then that's the current monthly income. So what's interesting is, so Mr. Gandy declares his current monthly income at $3,900 per month, which is below the threshold of Section 707b6, which says the debtor has to earn more than the median income for his applicable state in order for a creditor to have standing. Now, here's the interesting thing. I went back to the debtor's pay stubs, I added him up, and I found that his statement... I found that his current monthly income was above the threshold determined by Section 707b6. So I filed a brief with the bankruptcy court, and I said, Your Honor, that this document is false. His current monthly income is above the threshold amount, which I, therefore, as a creditor, have standing to file the motion to dismiss. Now, here again is the next astonishing thing of the case. That document was filed approximately June something of 2013. Weeks go by, and Mr. Newton, on behalf of the debtor, does not amend his document. And I was astonished because, as I indicated before, the current monthly income is a specific number. We knew if it was false or not. So then the court then... Let me just grab a bit of water. I tend to talk fast. So what good is going to come out of this from your perspective? You're going to be able to collect a little more than you would have? Is that the... Well, I also represent a couple of the creditors who also claim that they were defrauded. So the intent is simply to... To get the discharge. Right, to deny the discharge, and then my clients, as well as myself, would be allowed to collect. But, you know, it's going to take a long time. Are you going to try to resolve this? I mean, is it worth thinking about settling it? Oh, I mean, we've... I've offered to settle it many times, but Mr. Gandy has not been willing to do that. So, okay, so then... So he refuses to amend. The court then issues a rule to show cause... Mr. Chair, you and your clients, do you ultimately want to collect? I mean, ultimately I want to collect, but, you know, my amounts... How much does the... Show you and your clients are owed? I know you probably don't think you're going to collect all of that. At least I hope you don't think that. Oh, okay. Well, my personal claim is for about $8,000. And then your other clients, what's it all add up to? You're representing... I also represent a woman in Florida. Her name is Karen Temple. She has a fraud judgment against Mr. Gandy for $59,000. And I also represent his former landlord in Knoxville. And she has also a judgment which had elements of fraud in it for approximately $8,000. So among the three of us, we represent about $70,000 of the debtor's outstanding debt. The total amount of debt is about $105,000. And he's still working as an automobile salesman? Yes. There's actually a dispute as to whether or not he is an automobile salesman or whether he was the finance manager. At times, he's claimed to have been the finance manager. Other times, he claims just to be an auto salesman. So anyway, with respect to this one issue, I'll quickly wrap it up so I can move on to some of the other issues in connection with the cross-appeal. The court issued a rule to show cause and says, Mr. Shuchart, I wanted you to show why you have standing in order to file this motion to dismiss. I then again filed all the pay stubs and filed a complete explanation. I said that the current monthly income is false and I do have standing. The court then denied the motion to dismiss on the basis of the false document. And Judge Steyer said, I want to resolve this by adversary proceeding. I don't want to do this by motion. So as a result, we litigated an entire contested matter on the basis of this document. The following day, after the motion to dismiss was denied, I served a motion for sanctions under Rule 9011 of the Bankruptcy Code, which is the bankruptcy analog for Rule 11, saying you filed a false document, you're relying upon it, I want you to withdraw it, or I'm going to hold you responsible for sanctions. At that point, after about three weeks, Mr. Newton finally withdrew the false document. But before that, we had to do, we did an appeal of the contested matter, we did the motion for sanctions, and then in addition, it led directly into this adversary proceeding. So that was just one of the prongs of what the lower court relied upon. But in addition, there were false oaths all throughout this case. Can I ask you this? I'm a little unclear as to what additional benefit you get if you prevail upon your cross appeal. Oh, OK. The cross appeal provides no additional benefit. I viewed it as kind of a precautionary measure. Because I wanted to make sure that those issues were before the court. So as long as Mr. Gandy is unsuccessful in his appeal, you're exactly where you would have been anyway. Yes, Your Honor. The cross appeal could be deemed moot at that point. OK. The cross appeal involved issues relating to discovery answers. And in fact, he filed a Schedule B, which is a schedule of assets. And on Schedule B, he says no bank accounts. I went to, I had a copy of his pay stub, which indicated that Mr. Gandy's income was being directly deposited into some bank account. So I went to Mr. Newton and I said, well, Mr. Newton, your client says he's got no bank accounts, but he's got direct deposits somewhere. So Mr. Gandy refused to give me his bank records. I did a motion to compel. The motion to compel was granted. And on the basis of that, we found out that he had a bank account at an internet bank called MetaBank. Mr. Gandy refused to comply with the motion to compel, which under the applicable statute, 727A, that alone would be grounds for denying the discharge. But in addition, I subpoenaed the records directly from MetaBank, and we found that there was not just one bank account, but two bank accounts at MetaBank. And then once we got into those bank records, we found that he was not paying his rent on the basis of the income from the car dealership that was going into the MetaBank account. So the main benefit you could hope to get is an opportunity to, I mean, assuming that Mr. Gandy is unsuccessful on his main appeal, the only additional benefit you seek to gain in this case is further exposure of Mr. Gandy. That's correct. I just wanted to, we were talking about the- I mean, you think he's even a bigger frog than the bankruptcy court and the district court thought, and you're anxious to have that belief on your part vindicated. Would that be right? Well, yes, Your Honor. It's simply a precautionary measure. As we were talking earlier, we're looking at the pattern of conduct here. And if I had not done the cross-appeal, I would have been denied, you know, approximately half of the pattern of conduct. I apologize for doing the cross-appeal. I just want to be sure I know what its implications are, if any. Oh, okay. Yes, yes. It is solely just additional material to argue, to provide additional reference material. But I would certainly hope that it would not be necessary for the case. So, but- Are you going to start garnishing anything you can find in the bank or in his salary or in, I mean, you're just going to go after him? Yes, yes, Your Honor. You're a creditor's equivalent of Javert. You're going to follow him everywhere, aren't you? We will certainly try. So, the, maybe just to touch on a few other issues. The, so I dug into the Medibank records and I was trying to figure out how Mr. Gandy was paying his rent and his car payment and his utilities and his cell phone. So then I served another discovery request and I said, please tell us who your landlord is and tell us what this other credit card is ending in 3397. And then in addition, tell us where the income is coming in from this because it's not being reflected by the car dealership money going into the known bank account. Mr. Gandy refused to comply with that information. He said he had another bank account through Bank of America for, which was for a closely held company that was paying some of his bills. But the closely held company was not disclosed in his schedules. So, there was an issue there and at this point he has not yet disclosed those bank records for Bank of America. In addition, we don't have the name of his landlord. So, at this point, we don't know where these additional expenses are coming from. So, for all of those reasons, I would submit that we don't yet have an accurate picture of the Stedders finances and for that reason, I would respectfully request that the court agree with the lower courts. Thank you, Your Honors. All right, Mr. Newton. I want to ask you about something that you said. I understood you to say that there had been no finding of materiality in this case and I have just looked through two opinions that Judge Reeves wrote and one that Judge Stair wrote and I am able to find explicit determinations in each of them that the statement your client made were in fact material and I mean, I don't need to go over those with you, but I mean, it's not correct to tell us that they did not discuss the issue because both of them discussed and considered it. Judge Reeves specifically said that the test you were arguing for was wrong. She cited case authority and so, you know, this argument, I'm not saying you don't have a right to have us consider it, but it has been fully and fairly considered below, hasn't it? Well, I don't know that, I mean, when you go through and look at what his comments are, the judges, you read through his memorandum, I read through it again before today's hearing, he talks about the false hopes. He goes into the three things that he found were false. Now, he talks about it at length, but he doesn't say. The finality is on page 12 of Judge Reeves' last opinion in the case. It's discussed pretty extensively in Judge Steyer's opinion around page 17, 18, 19, around in there and it's discussed in an earlier opinion of Judge Reeves at six and seven, so. Well, my interpretation of, when I was there at the trial and I read all through this, I'm not going to disagree with you, what you're finding, but I don't think he had a finding that affected the outcome of the case. I think he said there was obvious errors. So, is it now that your client's conduct didn't affect the outcome of the case or that the judge's findings didn't affect the outcome of the case? Well, this is a false oath. He's finding that my client made false oaths and I don't disagree. He found them to be false and he didn't think they were good oaths, but I don't think he made a finding that materially affected the outcome of the case as required because it didn't. The trustee, as I put in my brief, filed a no-asset report. Nothing that happened in this case affected the outcome of the case, so I think that's important for debtors that make mistakes. If it's a $50,000 balance in their checking account and they say it's $100,000, that is material because it affects the outcome of how creditors would receive an asset. And that's the cases that talk about materiality. It has to have some ultimate effect on the case. Mr. Shuchart's points are related to a Chapter 7 means test. This case was two years and a month in 13, and the means test is not related to 707B. It doesn't have anything to do with it. As Judge Starr says in the bottom of, I think, page 13, he said, of abuse still did not arise based on the debtor's deductions. Trial Exhibit 39. So he reviewed the Chapter 7 means test and didn't find there was an abuse involved in the correct means test. But it is material in other ways. Well, the original filing of it is not under Lanning, doesn't dictate the payments to creditors, and he had a confirmation hearing. I think the U.S. trustee's filing of their statement is very material because even it touches on the 13 trustee's motion about whether it's additional income. And it says disposable income is not based on additional gross income, it's based on actual disposable income. They're an independent voice that watches 13s, and I cited their filing that's filed in response to his request to amend these schedules. And they filed, they reviewed it all, and their expertise said that this case would still be eligible for Chapter 7. So, again, the issue he's raised about the motion to dismiss 707B didn't come about until well into the case. So I think, again, the false oath that Judge Stier finds, if he finds that, I don't think it affected the outcome of the case. Still hasn't. Because nothing that these oaths represent would change their benefit creditors whatsoever. So that's our point. Thank you. We appreciate the argument both of you have given, and we'll consider the case carefully. And I believe the remaining cases being on the briefs, we will adjourn court.